GEORGIA RAILWAY AND ELECTRIC CO. *v.* REEVES.

123　697
124　681
123　697
125　404

123　697
129　370
129　716

1. Where an action was based on the allegation that a passenger on a car of an electric railway, at the direction of the conductor, was required to change cars, and, while passing from one car to another, she was injured by the negligent conduct of the defendant's agents and servants in connection with such change, an amendment which alleged an additional act of negligence forming part of the same transaction did not set up a new and distinct cause of action.

2. Such an amendment, which alleged that "said jerk of said car was caused by the defendant's servants and agents in charge of said car," was not subject to objection on the ground that it did not connect the alleged negligence with the defendant.

3. If a car is at rest temporarily, and a passenger is lawfully leaving it, or passing from it to another car, under the direction of the conductor, and while this is in progress a sudden and violent jerk or movement of the car is

caused by the company's agents, resulting in injury to the passenger, it is not necessary to allege in detail by what particular means they caused the jerk to occur.

4. While an independent act of negligence not connected with, contributing to, or causing the injury to a passenger is immaterial, and an amendment alleging such an act is demurrable, yet where the amendment, taken in connection with the declaration, sufficiently shows that the act alleged in it formed a part of the conduct of the defendant's agents from which the injury was alleged to have resulted, there was no error in overruling a demurrer thereto.

5. Where the evidence for the plaintiff in an action for damages tended to show that the injury occurred on the same line of railroad, but at a point some 350 or 400 yards distant from the place where it was alleged in the declaration to have happened, an amendment for the purpose of correcting the allegation so as to make it conform to the evidence, but still referring to the same transaction, and not to a different occurence, did not add a new and distinct cause of action, and was not objectionable on that ground.

6. If any objection could properly have been made to the allowance of such an amendment, it furnishes no cause for a reversal, where upon further evidence being introduced, which tended to show that the injury in fact occurred at the point originally alleged, the amendment was withdrawn.

7. If a motion for a nonsuit should have been granted at the time when it was refused, yet if the evidence afterwards introduced supplied the deficiency, no reversal will result from such refusal.

8. Where the presiding judge, at one part of the charge on the subject of the presumption arising from proof of injury from the running of the cars of a railroad company, or the acts of persons in its employment, did not limit such presumption to the specific acts of negligence alleged, but in his general charge did clearly and specifically confine the jury to the consideration of such specifications of negligence, this furnishes no ground for a new trial.

9. If a car containing passengers is stopped while in transit, and the passengers are directed by the conductor to change to another car which is on a track parallel to the first, and if while they are so doing the employees of the company put out the lights of the first car, and cause it to jerk suddenly, resulting in injury to a passenger who is in the act of making the change, this would be an injury resulting from the running of the cars of the company, within the meaning of the statute, and would also be a damage done by a person in the employment and service of the company, so as to raise the statutory presumption of negligence against it.

10. None of the other grounds of the motion for a new trial in this case require a reversal.

Argued June 22, — Decided August 3, 1905.

Action for damages.   Before Judge Reid.   City court of Atlanta.   September 17, 1904.

Mrs. Malinda Reeves brought suit against the Georgia Railway and Electric Company to recover damages for a personal injury, alleging, in brief, as follows:   She was a passenger on one of

defendant's cars on November 20, 1902, between the hours of five, and six p. m. When the car reached a certain point on the line. it stopped, and the conductor directed the passengers to transfer. from it to another car of the defendant, which stood on the parallel track, and which was to carry the passengers to the end of the journey. The conductor and motorman directed the passengers to step from the car on which they had been riding to, the other car. They negligently failed to exercise any care or diligence in assisting passengers, particularly female passengers, like the plaintiff, who was an elderly lady, from one car to the, other, and negligently failed to provide any safe means of getting from one car to the other. They negligently failed to stop the car at any proper place where there was a platform or a raised place for passengers to alight, and negligently directed the passengers to step from one car to the other. A number of passengers were in front of the plaintiff, and a number behind, and they were crowding and pressing in the cars from one to the. other. Passengers made a step from one car to the other. The, conductor and motorman stood by, seeing and directing and permitting this to be done, and permitting the passengers to crowd behind the plaintiff with force and speed. The car on which the, plaintiff had been riding had been lighted by electricity, and just. as the plaintiff was in the act of undertaking to step from one. car to the other the conductor negligently pulled down the trolley pole, and by this method, and by other means unknown to the. plaintiff, caused the car to become suddenly darkened, and no sufficient light was thrown out between the cars to enable persons to safely make the step from one car to the other, or to. safely judge of the distance; and because the plaintiff was unable to see or discern the landing place or step on the car, and because the passengers behind were crowding and pressing her, with the knowledge of the conductor and motorman, and because no safe landing or passageway from one car to the other had been provided, and because the plaintiff was in no way assisted or guarded or protected, and failed to get a firm footing upon the step of the. other car in passing from one car to the other, she fell to the. ground and was permanently injured. The nature of the injury was specifically alleged. The defendant admitted that the plaintiff was a passenger on its car; that the car was stopped and the,

conductor directed passengers to transfer from it to another car which stood on a parallel track, for the purpose of carrying the passengers into the city of Atlanta. The other substantial allegations were denied. The plaintiff amended her declaration by alleging, that, when she was in the act of stepping from one car to the other, there was a sudden jerk or movement of the car from which she was stepping; that such jerk or movement of the car was negligence on the part of the defendant, and that it was caused by the defendant's servants and agents in charge of the car. This amendment was allowed over objection, and exceptions pendente lite were filed. While the plaintiff was on the stand she testified that the injury occurred, not at Hurt street, as alleged in the declaration, but at a point known as Moreland's station, which other evidence indicated was about 350 or 400 yards distant from Hurt street. Thereupon an amendment was offered and allowed over objection, alleging that the injury really occurred at Moreland station. The plaintiff's evidence was not very clear as to the location, as she stated that she was not familiar with the line. When the defendant's evidence was introduced, it showed positively that the occurrence really took place at Hurt street. The plaintiff then withdrew the amendment previously made, changing the allegation as to the place of the occurrence, and returned to the original allegation on that subject. This also was objected to.

The evidence on behalf of the plaintiff, as to what transpired at the time and place of the alleged injury, was, in brief, as follows: The plaintiff was returning to Atlanta from Decatur, six miles distant, on one of defendant's cars operated by electricity; between six and seven o'clock in the evening. When the car arrived at a place about the outskirts of the city of Atlanta it stopped alongside of another one of defendant's cars, which was on a parallel track. The conductor stated that they had lost their schedule, and instructed the passengers to change to the other car immediately. They were rushed out, and the plaintiff went to step from one car to the other (or, as she expressed it, "went to make my step") when the conductor turned the trolley, the lights went out, and there was a sudden jar of the car, caused by the defendant's agents, which threw the plaintiff to the ground, causing the injury. The evidence for the defendant tended to show the fol-

lowing among other facts: There was an arc light at the junction of Hurt and Decatur streets, used for lighting the city streets. When the two cars were parallel to each other both were still. Owing to a loss of time by the one coming into Atlanta, the schedule was disarranged, and it became necessary for the passengers to transfer to the other car in order that the first might turn back and resume its regular schedule. Both cars remained still while the passengers went from one to the other, and both were lighted. No change was made in the lights at the place, except that the headlight on the first car was made ready to be transferred to the other end of it. To do this a key or stop was taken out which disconnected the electric current from it. The trolley was not moved until after the passengers were transferred. The effect of taking the trolley off the wire would not be to cause the car to move, but to disconnect the current from it and render it impossible for it to move. Both cars were standing still during the transfer. The car was in good running order. One witness for the defendant testified: "The two cars were standing side by side, and the other passengers were stepping from one car to the other, and she went to step across, and it looked like that she stepped on her skirt, and she dropped down there." Neither the changing of the headlight nor the change of the trolley pole could have caused a jerk of the car.

The jury found in favor of the plaintiff five hundred dollars. The defendant moved for a new trial, which was refused, and it excepted. Error was also assigned on the allowance of the first amendment to the declaration.

*Rosser & Brandon, W. T. Colquitt,* and *B. J. Conyers,* for plaintiff in error. *Arnold & Arnold* and *Harvey Hill,* contra.

LUMPKIN, J. (After stating the facts.) 1. It was contended that the amendment, alleging that while the plaintiff was stepping from one car to the other the defendant negligently caused the car to jerk suddenly, added a new cause of action. This ground of exception is not well taken. The action being based on the allegation that while a passenger, at the direction of the conductor, was passing from one car to another, she was injured by the negligent conduct of the defendant's agents and servants in connection therewith, an amendment which alleged an additional act of negligence in the same transaction did not set out a new

and distinct cause of action.  *City of Columbus* v. *Anglin*, 120 *Ga.* 785; *Harris* v. *Central Railroad Co.*, 78 *Ga.* 525; *Ellison* v. *Georgia Railroad Co.*, 87 *Ga.* 699; Civil Code, § 5098.

2. The bill of exceptions pendente lite assigns error in allowing this amendment, on the ground that it "does not connect the alleged negligence with the defendant." It distinctly alleges " that said jerk of said car was caused by the defendant's servants and agents in charge of said car."

3. It was further objected that the amendment did not show in what way the defendant caused said alleged negligence. It was not necessary that the plaintiff should ascertain and allege the particular methods by which the defendant's employees produced a sudden jerk while she was leaving the car.  Where a car is at rest, and a passenger is lawfully leaving it or passing from it to another car under the order or at the request of its conductor, if a sudden and negligent jerk or movement is caused by the company's agents, resulting in injury to the passenger, it is not incumbent on the passenger to allege the specific manner in which it was produced.  It would be an unreasonable burden to place upon her to require that she should allege and prove whether the motorman turned on the current or turned off the brake, or by what method of handling the complex machinery connected with a car propelled by electricity the jerk was produced.  The allegation of the amendment on this subject was sufficient.

4. Objection was further made on the ground that the amendment does not show in what manner the alleged negligence contributed to or caused any injury to the plaintiff.  If this amendment stated a new count which should be complete in itself, or if it alleged some act of negligence disconnected from the transaction set forth in the declaration, by reason of which negligence injury to the plaintiff was alleged, the point would be well taken. But we think that under the allegations of the declaration, which show that she was a passenger on defendant's car, that under order of the conductor she was leaving that car and undertaking to step across to another, and that by reason of negligence on the part of the defendant's agents in connection with such transfer she fell and received an injury, the addition of another act of negligence in the same connection might fairly be construed

with the whole declaration as being one of the causes which pro-duced the injury. Taking the amendment, therefore, in connec-tion with the original declaration, while it might have been more explicit, we do not think that it was amenable to this objection.

5, 6. Complaint is made that after the plaintiff closed her evi-dence, wherein the scene of the injury was located at a point 350 or 400 yards distant from that alleged in the declaration, a mo-tion for a nonsuit was made, and thereupon an amendment was allowed making the declaration conform to the evidence of the plaintiff. It is urged that this set forth a new cause of action. This objection was not well founded. The mere correction of an allegation as to the exact location of an occurrence on the line of a railroad, so as to allege that it in fact occurred a few hundred yards distant from the point alleged in the original declaration, does not add a new and distinct cause of action. It is the same cause of action, nor does it become a new and distinct cause by merely shifting the scene of the occurrence a short distance along the line of the railroad. By doing so there was no difference in the law applicable, or in the evidence necessary to support the substantial grounds of the plaintiff's contention. Even if there had been error in the allowance of this amendment, it could fur-nish no ground for reversal, because at a later stage of the trial the amendment was withdrawn, and the original allegation re-stored, the defendant's evidence showing that the occurrence took place at the point alleged in the original declaration.

7. Error is assigned because the court overruled the motion for a nonsuit. If the motion rested on the variance between the al-legata and probata with reference to the place at which the injury occurred, the making of an amendment which caused the former to conform to the latter destroyed the right to a nonsuit, if it ex-isted. If, however, we should consider the case as if the amend-ment which was afterwards withdrawn had not been made, and that there was an error at the time when the motion was made in not granting the nonsuit, yet, if the evidence afterwards intro-duced supplied the deficiency, no reversal will be granted on that ground. Here the evidence of the defendant clearly showed that the occurrence transpired at Hurt street, the place alleged in the declaration.

8. The motion for a new trial assigns error in the following

charge: "Now, in this investigation, gentlemen, if the plaintiff makes it appear to you from the evidence in the case that she was injured in the manner that she sets forth in her declaration, the law would presume then that the defendant was negligent, and the burden would be cast upon the defendant to show to you either that it was not negligent, or else the injury to the plaintiff, if she was injured, was due to accident and not caused by the defendant's negligence, or else that the plaintiff by ordinary care on her part could have avoided the consequences to herself of the defendant's negligence, if that is shown. If the defendant makes either of these propositions appear, that would be a reply to the presumption and make a complete defense to the action." The grounds of complaint in respect to this charge are: that it was without basis in the evidence; that the charge as to the presumption of negligence was not adapted to the evidence; that there was no evidence to show that the plaintiff was injured by the running of a locomotive or cars or other machinery of the defendant, or by any person in its employment; that the case was not one to which the statutory presumption against railroads was applicable; and that the charge raised a general presumption of negligence against the defendant, whereas, if any presumption arose at all, the court should have limited it to the specifications of negligence submitted to the jury. The evidence furnished ample basis for this charge. The judge excluded from the consideration of the jury all the specifications of negligence except two, causing the light to go out and causing the sudden jerk; and while he did not, in immediate connection with the charge complained of, inform the jury that the presumption of negligence arising against the defendant would be limited to the specifications of negligence submitted to them, the general charge contained in the record shows that he did do this several times. At one point in the charge he instructed the jury: "Your investigation of the case on the question of whether defendants were negligent or not negligent will be confined to these two specifications, and you would not be authorized to go outside and inquire whether the defendant was or was not negligent in some or any other way than that set forth in these two specifications of negligence which will be submitted to you." At another time he said: "Your method of inquiry, confining yourselves to these two spec-

ifications to which I have called your attention," etc. And in several other portions of the charge he emphasized the fact that the consideration of the jury was confined to these specifications. Under the entire charge, the jury could not have understood that the judge referred to a presumption of negligence in respect to other matters which he had expressly excluded from their consideration.

9. It is urged that, if the injury occurred as alleged and proved by the plaintiff, this was not a case in which the statutory presumption of negligence arises. The Civil Code, § 2321, declares: "A railroad company shall be liable for any damage done to persons, stock, or other property, by the running of the locomotives, or cars, or other machinery of such company, or for damage done by any person in the employment and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company." The argument is, that, inasmuch as the car was standing still when the passengers were directed to leave it and go to another car, the injury was not done by the running of the car, or by any person in the employment and service of the company. This argument would be sound if made in regard to an injury which was entirely disconnected from the running of a car, or which was not produced by some direct act of a person in the employment of the company. And such was the ruling in *Ga. R. Co. v. Nelms*, 83 *Ga.* 70; *Savannah Ry. Co. v. Flaherty*, 110 *Ga.* 335. But it would be too narrow and restricted a view to hold that if while passengers are in transit upon a car it was stopped for one or more of them to alight, or to be transferred to another car, and the injury resulted to one of them by reason of turning out the lights in the car, or causing it to jerk while the passenger was alighting, this was not done by the running of the car, or by a person in the service of the company, if such person put out the light or caused the jerk. Such an occurrence would be a part of the actual transit. The running of the car, as used in the section of the code above quoted, is not confined to a mere collision with a person on the track. An unnecessary jerk causing an injury to a passenger while alighting is a part of the running, within the reason and spirit of the statute.

Moreover, if while the passenger is in the act of alighting an employee of the company· turns out the lights or causes the car to jerk, and as a result the passenger is injured, this would be damage done by a person in the employment and service of the company, within the meaning of the statute.

10. There were numerous other grounds of the motion for a new trial, alleging errors on the part of the court in stating the contentions of the defendant, and in various charges and refusals to charge, and omissions to charge. A careful consideration of all of them in connection with the evidence and the charge given convinces us that none of them are well taken. The verdict is supported by the evidence.

*Judgment affirmed. All the Justices concur, except Simmons, C. J., absent.*