### 1322. HUBBARD *v.* MACON RAILWAY & LIGHT CO.

1. In a case where it appears that an employee was hurt by steam, from a stationary engine in the power plant of an electric street-railway company, blowing through a leaky valve in the lubricator of a pump connected with the engine, while he was attempting to oil the pump, section 2321 of the Civil Code, so far as it relates to the presumption of negligence, is not applicable.

2. Except where the injured employee is an inspector, the master's means of knowledge of latent defects in the machinery furnished are primarily to be considered as greater than those of the servant.

3. The duty of inspecting for defects which would not be disclosed by superficial observation is not primarily imposed upon a servant employed to operate a machine or to see that it is operated.

4. The plaintiff clearly proved, by circumstantial evidence, that he was injured by a latent defect in the machine he was operating; the master's negligence and his own diligence were issuable; and the court erred in granting a nonsuit.

Action for damages, from city court of Macon—Judge Hodges. June 16, 1908.

Argued October 30,—Decided November 22, 1908.

Hubbard was employed by the street-railway company as assistant engineer, and at the time his cause of action arose he was acting as engineer. His duties related to the operation of a stationary engine in the power plant of the defendant company. A part of the machinery was a pump, to which was attached a lubricator. It became Hubbard's duty to oil it. In his petition he alleges, that as he opened the cap, in the ordinary manner, to pour in the oil, steam, water, and hot oil spurted forth, scalding his face

and burning out one of his ear-drums; that this was occasioned by the fact that the valve in the lubricator, which should have held the steam back, was defective and leaked. The trial resulted in a nonsuit; to which Hubbard excepts.

*Napier & Maynard,* for plaintiff.

*Roland Ellis,* for defendant.

POWELL, J. (After stating the foregoing facts.)

1. The plaintiff contends that this is a case to which section 2321 of the Civil Code, which raises a presumption of negligence against railroad companies when damage is done "by the running of the locomotives or cars or other machinery," is applicable. Considering the origin of the rule, we do not think so. *Atlanta Ry. Co. v. Johnson,* 120 *Ga.* 908 (48 S. E. 389); *Ga. R. Co.* v. *Nelms,* 83 *Ga.* 70 (9 S. E. 1049, 20 Am. St. R. 308); *Sav. Ry. Co.* v. *Flaherty,* 110 *Ga.* 335 (35 S. E. 677). Compare and examine on the common-law rule, of which the Georgia rule is a declaration and an extension, Farish *v.* Reigle, 11 Gratt. 697 (62 Am. Dec. 666, and notes); Smith *v.* St. Paul Ry. Co., 32 Minn. 1 (18 N. W. 827, 50 Am. Rep. 550, and notes); Memphis Co. *v.* McCool, 83 Ind. 392 (43 Am. Rep. 71, and notes).

2. We think, however, the court erred in awarding a nonsuit. The master, in employing this servant and in putting him to work at this machine, by implication of law warranted to him that the machine contained no latent defect undisclosed, so far as the master knew or by reasonable care could discover, and that the master would use reasonable care to keep it in that condition; hence it became the master's non-delegable duty to use ordinary care to see that the machine remained free from such defects and to have reasonable inspection made to prevent them from arising. *Brown* v. *Rome Machine Co.,* ante, 142 (62 S. E. 720). It is likewise elementary that if the servant knew or by reasonable diligence could have known of the defect, he is conclusively presumed to have assumed the risk of injury from it. The defect in the present case was latent; it was not discoverable by superficial observation. The servant did not know of the defect in the valve; and since he also made it appear, from the proof, that the pump was not usually run while he was on duty, he gave a reasonable explanation as to why he had not discovered the defect. "As a general rule, a servant is under no obligation to inspect the appli-

ances about which he works, or that part of the plant by which his safety may be affected, for the. purpose of discovering concealed dangers which would not be disclosed by superficial observation." *Southern Cotton Oil Co.* v. *Dukes,* 121 *Ga.* 787 (49 S. E. 788) ; *Duke* v. *Bibb Mfg. Co.,* 120 *Ga.* 1074 (48 S. E. 408) ; *Southern Cotton Oil Co.* v. *Gladman,* 1 *Ga. App.* 262 (58 S. E. 249). The duty of inspecting for defects, however, is one of the absolute duties of the master. Therefore, primarily, the servant's means of knowledge of latent defects are not to be considered as equal to those of the master.

3. The exception to this rule arises when the injured servant himself is employed as an inspector. *Lucas* v. *Southern Ry. Co.,* 1 *Ga App.* 810 (57 S. E. 1041) ; *Green* v. *Babcock Co.,* 130 *Ga.* 469 (60 S. E. 1062). The duty of general inspection is not primarily included in the duty of operating or directing the operation of a machine, or even in the duty of repairing such defects as might from time to time be disclosed. *Green* v. *Babcock Co.,* supra. The plaintiff directly and unequivocally testified that it had not been made his duty to inspect the machine for defects. The court erroneously excluded testimony that this duty had been imposed upon another named employee; but even with the record silent as to whom the master had placed this duty upon, the law still left it resting upon the master; for this duty is non-delegable, in the sense that the master can not relieve himself of responsibility for its non-performance by imposing it upon an employee.

4. It is contended by the defendant that the plaintiff did not show the existence of the defect. We think he made a prima facie case as to this. It is true that he never saw the valve before or after the time of his injury. He knew, however, the general construction of the machinery. He exhibited a diagram of it to the jury, showing the relation of the valve and of the other parts. From an examination of the diagram, it seems impossible that the steam could have come through the valve, when it was closed, as the plaintiff testified it was, so as to blow the contents of the lubricator into the defendant's face, if it had not had the defect of being leaky. Without frightening any of the brethren of the profession by saying that it was a case of res ipsa loquitur (for this phrase seems to be a bugaboo to some members of the bar), we will say that the circumstances were such as clearly to prove, according to all

the rules of circumstantial evidence, that the valve contained a leak. As the plaintiff directly testified, "there was no other way for it [the steam] to get in there." Even in pleading it is not necessary that the negligent deficiency be described in structural terms; a deficiency. may be sufficiently alleged by stating that the particular contrivance was so constructed or maintained that it gave forth a result which it was designed to prevent, and which such contrivances, as they are usually constructed and maintained, do prevent. *Atlantic Coast Line R. Co.* v. *Davis & Brandon,* ante, 214 (62 S. E. 1022); *Ga. Ry. & Elec. Co.* v. *Reeves,* 123 *Ga.* 702 (3), (51 S. E. 610). The plaintiff proved a prima facie case, and the grant of a nonsuit was erroneous.          *Judgment reversed.*