THE DARTMOUTH SPINNING COMPANY *v.* ACHORD.

A machinist employed by a corporation in its factory, not to use machinery, but to keep it in good order, and having knowledge that some of it is imperfect and that employés cannot be relied upon to prevent it from becoming dangerous for lack of oil, takes the risk of discovering the condition of the machinery at the time he attempts to repair it, such risk being incident to his vocation. The incompetency or negligence of other employés, or of officers or agents of the corporation, resulting in putting the machinery out of order and rendering it dangerous, will not make the corporation liable for an injury which he sustains in handling the machinery whilst engaged without their assistance in repairing it

December 2, 1889.

Master and servant. Negligence. Before Judge RONEY. Richmond superior court. April term, 1889.

Reported in the decision.

J. S. & W. T. DAVIDSON, for plaintiff in error.

M. P. FOSTER and TWIGGS & VERDERY, by brief, *contra.*

Bleckley, Chief Justice.

According to the declaration, the plaintiff, a skilled carpenter and machinist, erected and put up machinery for the defendant company which he knew was unsafe, as to certain parts of it, for the lack of self-oilers. He knew that no employé could be relied upon to keep it oiled, and that the omission to oil it properly would render it dangerous. He admonished the company of the danger, protested more than once against the omission to supply the needed self-oilers, and warned the company, even down to the day he was injured, to have the oiling duly attended to. But the company, though promising to heed his repeated notices and warnings, failed to do so. He nevertheless remained in its employment, and suffered himself to continue charged with the duty of giving such attention to the machinery, from time to time (save as to oiling and running it), as might be needed, and of performing in the capacity of carpenter and machinist everything requisite to be done, or that he might be ordered to do. Twice on the same day his services became requisite in the spinning-room to make corrections or repairs in the machinery. The first time the trouble was caused by the want of oiling, and this he discovered and made known to the boss. Later in the day, he was again called upon in a sudden emergency by the boss to look after the shafting, which was without self-oilers, and put it in order. He found the main belt had been taken off, and that the shafting had ceased running and was still. For lack of oil, the end of the shaft and the hanger had become very hot, but he did not know that the oiling had been neglected, or that the "babbit" had completely melted. Whilst he was in the act of taking off the belts with extra care, the shaft and five pulleys, the whole weighing over 600 pounds, fell upon him and he was severely injured. The melting of the "babbit" was the immediate cause of

the falling of the machinery. The declaration attributes the injury to the company's negligence in not supplying the necessary self-oilers, in not properly oiling the machinery, and in employing incompetent and unfit persons for superintendent, boss and oiler.

A demurrer, part of it going to the whole declaration, was overruled; and thus the question arises whether a cause of action is set forth.

The machinery was put up by the plaintiff himself, and was not afterwards to be used by him but by others. His subsequent concern with it was only to repair it and keep it in order. Whatever defects it had he knew; and the failure to oil it properly was foreseen and correctly predicted by himself. One instance of such failure had occurred on the very day he was injured, and this was brought to his attention. If he did not know of the second failure specifically, it was within his general knowledge as something likely to occur; and when he saw that the machinery was stopped, and that the stoppage was because of something wrong where there were no self-oilers, he could and should have anticipated that it had again occurred. He was not ignorant that the end of the shaft and the hanger had become very hot. To what should he have ascribed the heating but a lack of oil? He did not know that the "babbit" had completely melted, but he does not allege ignorance that it had melted in some degree; and the declaration avers that the complete melting of the "babbit" was the immediate cause of the falling of the shaft. While it is the duty of a master to furnish his servant safe machinery for use, he is under no duty to furnish his machinist with safe machinery to be repaired, or to keep it safe whilst repairs are in progress. Precisely because it is unsafe for use, repairs are often necessary. The physician might as well insist on having a well patient to be treated and cured, as the machinist to have sound and safe machinery to be repaired.

The plaintiff was called to this machinery as infirm, not as whole. An important part of his business was to diagnose the case and discover what was the matter. If he failed in this branch of his profession, it was either his fault or his misfortune. So far as appears, no one knew more of the state and condition of the machinery at the time than he did; and the object of calling him in the room was, that he might ascertain the cause of the trouble and apply the remedy. Unfortunately, he exposed himself before becoming fully aware of the extent to which the melting of the "babbit" had gone; and it was the want of that information, and not the negligence or incompetency of any one connected with the establishment, which brought about the injury. The incompetency and inattention of the others gave him more to do in his vocation, somewhat as a sickly climate favors a physician's practice. It is to the interest of those who use machinery for it to be always in good condition, but for it to fail often and get out of order is advantageous to the man whose business is to make repairs. True it is, that the risk of concealed dangers incident to the work of making repairs, is upon him, but as the skilled machinist is best competent to discover and avert such dangers, he is the proper man to incur the hazard. It seems to us clear that the risk was upon the plaintiff in the present instance, and that he is without even the shadow of a cause of action for the calamity which befell him.    *Judgment reversed.*