## GREEN *v.* BABCOCK BROTHERS LUMBER COMPANY.

1. Where a master employs a servant not to work with machinery, but to repair it when defective or out of order, the rule that the master is bound to use ordinary care to furnish, for his servant to work with, machinery equal in kind to that in general use, and reasonably safe for use by one exercising ordinary care, does not apply to the machinery to be repaired. *Dartmouth Spinning Co.* v. *Achord,* 84 *Ga.* 14 (10 S. E. 449, 6 L. R. A. 190).

2. If a master sends a servant, employed to repair machinery, to repair a particular machine, and knows, or in the exercise of ordinary care should know, not only that the machine is out of repair, but that there is some latent danger or unusually perilous condition attendant upon the service, and which is unknown to the servant, and could not be known to him by the use of ordinary care, and as to which he has not equal means of knowing with the master, the latter is under duty to warn the servant thereof. Civil Code, §§ 2611, 2612.

3. Independently of the allegation quoted in the 4th headnote, the petition in the present case set out a cause of action which was sufficient to withstand a general demurrer.

4. An allegation that "the plaintiff charges that the defendant knew of the defective condition of the condenser, on account of the fact that for several days previous to the explosion the engine had not been properly working and had by its actions given full warning that it was in a dangerous and defective condition," is subject to special demurrer upon the ground that it is not alleged in what respect the engine

had not been properly working, and because it is not alleged what actions of the engine gave warning that it was in a dangerous and defective condition.

5. The other grounds of special demurrer were without merit.

Argued February 12,—Decided March 28, 1908.

Action for damages. Before Judge Worrill. Miller superior court. August 3, 1907.

*Pottle & Glessner* and *B. B. Lane,* for plaintiff cited *Ga. R.* 118/91; 127/610 (3); 120/1030; 121/688-90; 781; 1 *Ga. App.* 810.

*Russell & Hawes,* for defendant, cited *Ga. R.* 84/14; 120/890; 119/363, 373; 122/695; 124/976.

ATKINSON, J. 1-2. The first and second headnotes, without further elaboration, sufficiently state the general rules of law applicable to this case.

3. The action was by a widow, for damages resulting from the death of her husband, caused by the explosion of a cylinder attached to a steam-engine which he was employed to inspect and repair, it being contended, that latent dangers existed in connection with the service to be performed, which were known by the defendant, or by the exercise of ordinary care could have been known by the defendant, and which were not known to the plaintiff's husband, and were not discoverable by him in the exercise of ordinary care, and which he did not have equal means with the master of discovering, and that the master did not warn him of the existence thereof. The suit was dismissed on demurrer, and error is assigned upon the judgment of the court. The petition alleged, among other things, substantially the following: The engine was equipped with a condenser, oil cup, and lubricator, and, when they were in proper working order, steam would go from the pipe to the condenser and be condensed into water, and this water would go into the lubricator from the top, while oil from the oil cup passed into it from the bottom. When the lubricator was filled with water, the oil, being lighter, rose to the top, and thence passed through a pipe to the engine, and thus lubricated the piston rod and engine. The lubricator was in the shape of a cylinder, made of glass, through which the oil could be seen rising to the top when the lubricator was working properly. About three weeks before the explosion, the water in the condenser had frozen and the con-

denser had burst. The master had repaired the condenser by sol-dering the break, but the repairing had been so negligently and de-fectively done that the water did not thereafter pass into the lu-bricator as it should have done, so as to allow the oil to rise and pass through the pipe at the top of the lubricator to the engine and the piston rod, and the result was that the engine and piston rod were without oil, or sufficient oil, became dry and hard, and finally caused the explosion which produced the injury. The plaintiff's husband had formerly worked for the defendant, but had left its employment three or four weeks prior to the time of his death, and had returned to work only a day or two before his death. The breaking and repairing of the condenser, as above set forth, occurred during his absence, and he had no knowledge that the condenser had been broken or repaired, and had not been called on to inspect the condenser or lubricator before, and he had not time, and had no opportunity, for discovering the con-dition of the same. It was not the general duty of the plaintiff's husband to inspect or to work with the machinery, but it was only his duty to inspect and repair any particular machinery in use at defendant's mill at such times as his service might be demanded by other servants of the defendant, employed in oper-ating any of the machinery connected with the defendant's sawmill plant. He was free from fault in the premises, and the injury was occasioned solely by the negligence of the defendant as stated. He did not know and had not equal means with the defendant of knowing of the defects and dangers. It was the duty of the de-fendant to have inspected the engine long before the plaintiff's husband was called upon to do so, and to have remedied the de-fects before the condition of the engine became so dangerous, and to have stopped the engine and exhausted all the steam before call-ing on him to repair it, or at least to have warned him of the dan-ger and placed him on an equal footing with the defendant with reference to the matter. His regular post of duty was not at the engine, but at some distance therefrom. He was called to the en-gine and it exploded and injured him.

The allegations charging negligence upon the part of the master, and excusing the conduct of the plaintiff's husband in failing to avoid the consequences to himself of the negligence of the master, stated a case against the defendant sufficient to withstand a general

demurrer. It is insisted that the plaintiff's husband had equal means of discovering the danger, but the allegations of the petition fail to develop facts sufficient to support that theory of defense. It was not the general duty of the plaintiff's husband to inspect, and it is alleged that, after he resumed his employment one or two days before the disaster, he had not been called upon to inspect this engine, and that he had not inspected the same or discovered the defects, and that he had not been informed that the cylinder had been broken and repaired, and that he had not been warned of the danger. Knowledge of the danger and duty to avoid the same should not be imputed to the plaintiff's husband, so as to impeach the general allegations of freedom ¯from fault, unless such knowledge should necessarily be inferred from the allegations contained in the petition. *Blackstone* v. *Central Ry. Co.*, 105 *Ga.* 380 (31 S. E. 90). No such inference is justified by the allegations of the petition under consideration.

4. The allegations quoted in the 4th headnote were subject to special demurrer, as specified, but if the particular paragraph at which the special ground of demurrer was aimed should not be cured by amendment, and should be stricken, the petition would still be sufficient to withstand a general demurrer. This being so, the entire case should not have been dismissed.

*Judgment reversed. All the Justices concur.*